THE GEORGE R. BARSE LIVE-STOCK COMMISSION COMPANY *et al.* v. L. L. TURNER.

No. 8255.

1. RAILWAY COMPANY, *Replevin Against, Where Brought.* An action against a railway company to recover the possession of specific personal property, or the value thereof, may be brought in any county into which its railway runs.

2. CHATTEL MORTGAGE— *Cattle—Error in Stating Age.* An error in stating the age of cattle sought to be recovered in an action of replevin, both in the plaintiff's petition and in the chattel mortgage under which the right of possession is asserted, is not necessarily fatal to the plaintiff's case; but where the identity of the cattle claimed with those detained by the defendant and the plain-

tiff's title thereto are shown to the satisfaction of the jury, a recovery may be had, notwithstanding the cattle are, in fact, one year younger than the age stated in the petition and mortgage.

*Error from Morris District Court.*

THIS action was instituted in the district court of Morris county by L. L. Turner, as plaintiff, against The George R. Barse Live-Stock Commission Company and The Missouri Pacific Railway Company to recover 140 head of four-year-old steers, branded "C" on the right hip, of which the plaintiff claimed the right of possession under a chattel mortgage executed by W. H. Conklin on the first day of May, 1889. A writ of replevin was issued at the commencement of the action, but the sheriff could not get possession of the property. The defendants severally made a special appearance and moved to dismiss the action, on the ground that the court had no jurisdiction over them, because both defendants were corporations, having neither a principal office nor officer in the county, and the cattle which the plaintiff sought to recover were not in the county at the time the suit was commenced. These motions were heard and overruled. The defendants answered, setting up the same matters as a plea to the jurisdiction of the court, and also denying generally the allegations of the petition. The railway company claimed no interest in the property, but was joined as a defendant on the ground that the cattle were in its possession for shipment by the commission company from Morris county to Kansas City. The commission company asserted a right to the possession of the cattle by virtue of a chattel mortgage executed to it on the 18th day of November, 1889, by W. H. Conklin and others, on 350 head of two- and three-year-old steers, branded "C" on the right hip. The commission company

had obtained possession of 212 head of cattle, which had been levied on by the sheriff of Osage county, under a writ of replevin, and shipped them to Kansas City. The plaintiff claimed that 140 of the cattle covered by his mortgage were included in the 212 head taken possession of by the commission company. It appears that L. W. Wilson went to Conklin's home place in Osage county, about five miles from Burlingame, prior to the execution of the plaintiff's mortgage, and looked at certain cattle on which Conklin proposed to give a mortgage to secure a loan of $6,000. Wilson made a memorandum of the number and description of the cattle he saw, and from that memorandum afterward drew the mortgage which covered all the cattle Wilson saw on Conklin's place, which were described in the mortgage as follows :

"Thirty-eight head of fat steers 4 years old ; 22 head of steers, full-fed, 3 years old, branded on right hip ' C ' ; 140 head of steers coming 3 years old this spring, branded on right hip ' C ' ; 10 steers 2 years old, branded on right hip ' C ' ; 210 head of cattle in all."

In the fall of 1889, J. H. Waite, the secretary of the commission company, made an arrangement with Conklin to loan him $10,000 for the purpose of buying cattle, on which Conklin was to give a chattel mortgage as security for the money. The cattle were to be gathered up and branded and the mortgage then given. The money was furnished, and Waite was notified by Conklin that the cattle were on hand. He then went down to Burlingame, where he met Conklin, and they together went to a pasture, east of Burlingame about two miles, where they found 257 head of steers freshly branded "C" on the right hip. They then drove to Conklin's home place, where Waite testifies he saw a bunch of large, fat cattle also branded "C"

on the right hip, and eight small cattle in the same inclosure with them; that there were 63 full-fed steers and eight small ones in this inclosure, and that in another inclosure there was a somewhat larger bunch of cattle; that the next morning they went to another place, which Conklin designated as his breaking farm, two or three miles from his house, where they found 85 dehorned steers. They then went back to Conklin's house, where the chattel mortgage was drawn up under which the commission company claims the cattle in controversy. The description of the cattle in this mortgage is as follows:

"Two hundred and fifty-seven head of two- and three-year-old native steers, branded 'C' on right hip, said cattle being on what is known as the Cheese farm, near Osage City, Kan.; 85 head of two- and three-year-old native dehorned steers, branded 'C' on right hip, now on my farm worked by Bratton, near Peterton, Osage county, Kansas; and eight two- and three-year-old native steers now in feed lot on my home farm near Peterton. The above being and including all the cattle of above description in our possession, being mostly three years old."

It appears that 100 head of steers were bought by Mr. June from Mr. Campbell, a stock-raiser in Barton county, in December, 1888, and were shipped by June to Burlingame and there sold to Conklin. These steers were denominated then as yearlings past, and were large, being the pick from a herd of 270 or 280 head. Some of the cattle taken possession of by the commission company were identified by Campbell and June as a part of the cattle sold by Campbell to June, and by June to Conklin.

The jury trying the case rendered a verdict in favor of the plaintiff for 90 head of cattle, of the value of $2,700, and judgment was entered on this verdict.

The defendants bring the case to this court for review. The opinion was filed May 9, 1896.

*Hutchings & Keplinger*, for plaintiffs in error.

*R. C. Heizer*, and *James D. McFarland*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: I. It is contended that the district court of Morris county had no jurisdiction over the defendants in this action. Both were corporations. The principal place of business and all the officers of the commission company were in Wyandotte county, and the railway company had merely its line of road and local agents in Morris county. The cattle sought to be recovered in the action appear to have been out of the county when the suit was commenced, or, at least, were moved out before the sheriff could take possession of them. It is contended that sections 49 and 50 of the code prescribe the rules determining the county in which an action against a corporation must be brought, and that it must be "in the county in which it is situated or has its principal office or place of business, or in which any of the principal officers thereof may reside, or may be summoned," and that the exception authorizing an action against a railroad company "for any injury to persons or property upon the road or line, or upon any liability as a carrier," to be brought in any county through which its road passes does not include an action of this kind, and that section 55 of the code cannot include actions against corporations, because specific provision is made with reference to them in the preceding sections.

It may be conceded, as claimed by counsel for plain-

tiffs in error, that chapter 123 of the Laws of 1871 does not change the law fixing the counties in which actions are to be brought; yet we hold that, construing the provisions of article 5 of the code in connection with section 63 of chapter 23 of the General Statutes of 1889, which provides that "Any action, prosecution or proceeding against a railway corporation for any liability, penalty, or forfeiture, may be brought in any county into or through which such railway runs," an action of replevin like this may properly be brought against a railway company in any county into which its road runs. (*Railroad Co. v. Brown*, 29 Neb. 492.) The action being properly brought against the railway company, service on the commission company in Wyandotte county was authorized.

II. The other assignments of error discussed in the briefs may as well be considered together, for the question really is whether the judgment is supported by the pleadings, evidence and special findings of the jury. The great difficulty in the case arises from the very unsatisfactory and inconclusive character of the testimony offered, and the fact that the cattle described in the petition and in the mortgage to the plaintiff are alleged to have been four years old at the time suit was brought, while the jury find that the cattle in possession of the defendants were but three years old. Neither Conklin nor any persons who were with the cattle and knew all about the different herds owned by him in 1889 and 1890 testified with reference to where the different herds of cattle were kept or to their being moved from one farm to another. The jury had only the testimony of witnesses who saw them at intervals, and whose indentifications are not very satisfactory. They had to decide the case from the evidence before them, and as both parties

were represented by able counsel, it is to be presumed
that the evidence offered on either side was the best
that could be procured.    The principal question was
one of identity of property rather than of priority of
liens.    If the commission company took possession of
the cattle which were on Conklin's home place in May,
1889, there would seem to be little doubt that the
plaintiff ought to recover.    If, however, all the cattle
in the possession of the defendants were either pur-
chased subsequent to that date by Conklin or kept by
him at that time at another place and not shown to
Wilson, then the plaintiff's mortgage could not cover
them.    The jury have resolved the doubts as to 90
head in favor of the plaintiff, and as to the bal-
ance in favor of the defendant.    Their verdict seems
to be based mainly on the testimony with reference
to the Campbell cattle, which were sold by Camp-
bell to June, and by June to Conklin in Decem-
ber, 1888.   Some of the cattle taken possession of by
the commission company and shipped to Kansas City,
and thence transferred to a pasture in Clay county,
were identified by June, and more particularly by
Campbell, as a part of the 100 head sold by him to
June.    The principal weakness of the testimony for
the plaintiff with reference to this 100 head of cattle
is in the failure to show that Conklin had them at his
home place when Wilson was there, and in the fact
that Wilson inspected the cattle on which he took the
mortgage and described them as being a year older
than the Campbell cattle were in fact.    Though there
seems to be very great doubt and uncertainty as to the
truth of the matter, we are unable to say that the con-
clusion of the jury is wrong.    The age of an animal is
not like a distinct mark or brand which can be recog-
nized at once from a glance, but often becomes a mat-

ter of dispute, even among those who have considerable experience in handling cattle. The facts that Conklin owned the Campbell cattle in May, 1889; that he had cattle which he exhibited to Wilson before the mortgage was given; that the cattle shown Wilson were on his home place, where the jury probably inferred he might then be keeping all his stock; that the loan made by the commission company was for the purpose of buying other cattle, and that cattle freshly branded at places away from Conklin's home farm were shown to Waite when the mortgage to the commission company was given, are all circumstances the jury were called on to consider. We cannot say clearly and beyond question that they erred in reaching the conclusion that the Campbell cattle were included in the plaintiff's mortgage, and that 90 of them were taken possession of by the commission company, though they were in fact a year younger than the plaintiff alleged they were in his petition and described them in his mortgage. It is true that there is much uncertainty in the testimony as to the exact number of the Campbell cattle that went into the possession of the commission company, but we cannot say certainly that another jury could determine the matter more accurately.

We think the renewal affidavit on the mortgage was treated as in evidence, and the instructions given by the court were fair, and correctly stated the law. Though we have very great doubts with reference to the correctness of the conclusion reached in this case, it is not probable that another trial would result in a more satisfactory verdict. The nature of the case is such that a decision the correctness of which can be asserted with entire confidence is not to be expected.

50—56 KAS.

The judgment is affirmed.

All the Justices concurring.